UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LONNIE CURTIS ECHOLS,

               Petitioner

      v.                              C–1–03–66

MARK HOUK,

               Respondent

## ORDER

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254.  The matter is before the Court upon the Report and Recommendation of the Magistrate Judge (doc. no. 10) recommending that the Petition for Writ of Habeas Corpus be denied with prejudice to which neither party has objected.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the London Correctional Institution in London, Ohio, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, respondent's return of writ, and petitioner's traverse.  (Docs. 1, 7, 8).

2

## Procedural Background

The 1996 term of the Hamilton County, Ohio, grand jury initially indicted petitioner on six counts of aggravated robbery, six counts of robbery and two counts of kidnapping. (Doc. 7, Ex. A). A jury found petitioner guilty of all counts, but on June 26, 1998, the Ohio Court of Appeals reversed the judgment and remanded the cause for a new trial. (Doc. 7, Ex. F). The state of Ohio appealed the judgment to the Ohio Supreme Court which declined jurisdiction on November 4, 1998. (Doc. 7, Exs. H, I).

On April 10, 2000, the state retried petitioner on two counts of robbery, two counts of aggravated robbery and one count of kidnapping in connection with two establishments, a Teasdale-Fenton dry-cleaning store and the Futon World store. (Doc. 7 at 3). The remaining counts were severed for subsequent criminal proceedings. (Doc. 7 at 4, n. 5). A jury found petitioner guilty of the robbery of the Futon store, but could not reach a verdict on the remaining four counts. (*Id.,* Exs. K, L). By stipulation, the trial court found petitioner guilty of a prior first-degree felony conviction specification. (*Id.,* Ex. M). On May 1, 2000, the trial court sentenced petitioner to twelve to fifteen years in prison with twelve years of actual incarceration. (Doc. 7, Ex. N).

3

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, challenging the joinder of his offenses, the sufficiency of evidence to support the conviction, the effectiveness of his counsel, the in-court identification, and the delay in his retrial. (*Id.,* Ex. S). On September 14, 2001, the Ohio Court of Appeals overruled each assignment of error and affirmed the judgment of the trial court. (Doc. 7, Ex. T).

Petitioner timely appealed to the Supreme Court of Ohio, raising the same claims he presented to the Ohio Court of Appeals. (*Id.,* Ex. Z). On January 16, 2002, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (*Id.,* Ex. B1).

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following grounds for relief :

> **GROUND ONE**: The Court erred when it denied Echol's [sic] rule 29 Motion and entered conviction.
>
> **GROUND TWO:** The Court erred when it tried both the Futon World and the Teasdale Fenton robberies together.
>
> **GROUND THREE:** Echols was denied effective assistance of counsel when counsel failed to object on the record to the joinder of the Teasdale Fenton related offenses.
>
> **GROUND FOUR:** The Court erred when it did not strike an in Court identification following a show up.
>
> **GROUND FIVE:** Echols was denied effective assistance of counsel when counsel failed to object to an in court identification following an unconstitutional show up in violation of his Sixth Amendment rights, or in the alternative, failure to object constituted plain error.

4

**GROUND SIX:** Echols was denied his Sixth and Fourteenth Amendment Rights to a speedy trial when conviction was entered against him.

**GROUND SIX:** Echols was denied his Sixth and Fourteenth Amendment Rights to a speedy trial when conviction was entered against him.

**GROUND SEVEN:** Conviction of Echols was against the weight and sufficiency of the evidence.

(Doc. 1, Habeas Petition).

In the return of writ, respondent argues that grounds two and four are waived due to procedural defaults and the remaining grounds lacks merit. (Doc. 7).

## OPINION

## I. Petitioner is not entitled to relief with respect to his insufficiency of evidence claims asserted as grounds one and seven.

As his first ground for relief, petitioner argues that the trial court erred when it denied his Ohio Crim. R. 29 motion for acquittal. As his seventh ground for relief, petitioner argues that his robbery conviction was both against the manifest weight of the evidence and not supported by sufficient evidence.

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship*, 397 U.S. 358, 363–64 (1970). When petitioner raises an insufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

5

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir.), *cert. denied*, 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318–19 & n.13; *see also York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied*, 490 U.S. 1049 (1989).

The Due Process Clause of the Constitution only forbids convictions based on "evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt." *Tibbs v. Florida*, 457 U.S. 31, 45 (1982). As both the United States and Ohio Supreme Courts have recognized, the standard employed when reviewing a claim that a guilty verdict was against the manifest weight of the

6

evidence is both quantitatively and qualitatively different from the standard used when considering a constitutional due process claim based upon the sufficiency of evidence. *See id.* at 44–45; *State v. Thompkins*, 678 N.E.2d 541, 546 (Ohio 1997), *superseded by state constitutional amendment on other grounds in State v. Smith,* 684 N.E.2d 668 (Ohio 1997); *see also State v. Mardis*, 729 N.E.2d 1272, 1274 (Ohio Ct. App. 1999), *motion for delayed appeal denied*, 755 N.E.2d 354 (Ohio 2001).

The manifest weight of evidence standard is a broader test than the standard used to evaluate the sufficiency of evidence. *State v. Martin,* 485 N.E.2d 717, 720 (Ohio Ct. App. 1983); *see also State v. Thompson,* 713 N.E.2d 456, 468 (Ohio Ct. App.), *appeal not allowed,* 700 N.E.2d 334 (Ohio 1998); *cf. Tibbs,* 457 U.S. at 41–45. In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence. In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a "thirteenth juror" to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins*, 678 N.E.2d at 546–47; *see also Tibbs*, 457 U.S. at 41–42; *Martin*, 485 N.E.2d at 720–21.

7

As the Supreme Court explained in *Tibbs,* 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence "does not mean that acquittal was the only proper verdict." Rather, a reversal based on the weight of the evidence "can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Id.* at 42–43.

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988). Accordingly, this Court concludes petitioner's claim in ground seven of the petition that his robbery conviction was against the manifest weight of the evidence does not implicate constitutional concerns, but, instead, only raises an issue of state law that is not cognizable in this federal habeas corpus action.

Petitioner's claim that the trial court erred in denying the Rule 29 motion, asserted in ground one, is also a matter of state law which is not cognizable on habeas corpus review.

8

On the other hand, petitioner's sufficiency of evidence claim raises a constitutional issue which this Court may consider. The Ohio Court of Appeals addressed petitioner's sufficiency of evidence claims, as follows:

> Robbery requires proof of an attempt or commission of a theft or flight immediately after the attempt or commission, and the use or threatened use of immediate force against another. Richey testified at the second trial that Echols had brandished a knife and had stated, "Be cool, baby." Unlike her earlier testimony, Richey further testified that she knew that she was in trouble when she realized that Echols "was not there to buy pillows if he had a knife in his hand and was asking [her] to be cool." Given Richey's testimony at the second trial, particularly as it related to whether Echols was attempting to commit a theft, we conclude that sufficient evidence was presented for reasonable minds to conclude that an attempted theft had occurred.

(Doc. 7, Ex. T at 4).

Maria Richey testified that on May 5, 1996, while working at the Futon World, a business owned by her husband, a man came into the store and asked for prices on pillows. (Tr. 127). He left without making a purchase, but returned about two hours later, stating that he wished to buy the blue pillows. (Tr. 128–129). She proceeded to her desk to write up an invoice. (Tr. 129). When she asked petitioner how he wanted to pay for the pillows, he said "cash" and then "be cool, baby." (Tr. 129). Richey glanced up and saw petitioner standing with a twelve inch knife about eight to ten inches from her face. (Tr. 129). She testified "I was in trouble, this guy is not [here] to buy pillows, he had other intentions." (Tr. 130). Richey screamed and petitioner repeated "be cool, baby" and ultimately fled. (Tr.

9

130-131).

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402–03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).  A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405–06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not

10

apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407–08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state–court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000); *Harris*, 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams*, 529 U.S. at 409–10 (O'Connor, J.); *see also Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000); *Harris*, 212 F.3d at 942–43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee*, 229 F.3d at 510, 512 (citing *Williams*, 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the AEDPA's standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall*, 340 F.3d 433, 436–437 (6th Cir. 2003) (finding that in *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court reviewed *de novo* portion of claim not analyzed by state court, without deferring to the state court or applying

11

AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

Although petitioner did not articulate specific demands for property nor take any property, reasonable inferences can be drawn from petitioner's actions that he was in the store to take some item by threat of force in the form of a knife being held over the victim. *Cf. State v. Smith,* No. 97 JE 25, 1999 WL 1243309, at *4 (Ohio Ct. App. Dec. 13, 1999) (when property is not taken and intent to deprive victim not verbally conveyed, robbery may be established by surrounding circumstances). Viewing this evidence in the light most favorable to the prosecution, any rational juror could have found petitioner guilty of robbery beyond a reasonable doubt. Moreover, the ruling of the Ohio Court of Appeals on the sufficiency of evidence with respect to robbery comports with the United States Supreme Court's *Jackson* standard and was based on a reasonable assessment of the facts in light of the record evidence.

Accordingly, petitioner is not entitled to habeas corpus relief with respect to ground seven.

## II.  Petitioner has waived his claim of improper joinder, asserted in ground two, and is not entitled to relief with respect to his related claim of ineffective assistance of counsel, asserted in ground three.

In his second ground for relief, petitioner asserts that the joinder of the offenses related to the Futon store and the dry cleaners violated his right to due process of law.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99–100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on

13

the ground that petitioner has waived his claims for habeas corpus relief. *See O'Sullivan,* 526 U.S. at 847–848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495–96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally–defaulted claim under the "actual innocence" exception, the otherwise–barred

14

petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed*, 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial. *Id.* at 261; *Wainwright,* 433 U.S. at 86-87; *see also McBee v. Grant,* 763 F.2d at 813. An adequate and independent finding of procedural default will preclude habeas corpus review of the federal claim, unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262. A procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its

judgment rests on a state procedural bar. *Harris*, 489 U.S. at 263. When the last reasoned state court decision rests both on a procedural default and an alternative ruling on the merits, the claim is barred from federal habeas review. *Coleman*, 501 U.S. at 729; *Harris*, 489 U.S. at 264 n.10; *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991); *McBee v. Grant*, 763 F.2d at 813. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991); *Warner v. United States*, 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams*, 489 U.S. 401, 410 n. 6 (1989); *see Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). Furthermore, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982); *Maes v. Thomas*, 46 F.3d 979, 986 (10th Cir.), *cert. denied*, 514 U.S.

16

1115 (1995).

In this case, the last state court to issue a reasoned decision addressing petitioner's claim of joinder was the Ohio Court of Appeals. In rejecting petitioner's claim, the court clearly and expressly relied on petitioner's violation of Ohio's contemporaneous objection rule when it stated:

> Echols did not make or renew a request for severance of the joined counts at any time during trial. If a motion to sever is not renewed, the issue is waived unless there is plain error.

(Doc. 7, Ex. T at 6). The court then proceeded to consider petitioner's claim for "plain error." However, it is well-settled in the Sixth Circuit that a state appellate court's review for plain error does not constitute a waiver or non-enforcement of the state procedural bar by the reviewing court. *See, e.g., Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)), *cert. denied*, 532 U.S. 989 (2001). The Ohio Supreme Court's later unexplained decision summarily denying petitioner leave to appeal and dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default. *Taqwiim v. Johnson*, 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik*, 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied*, 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99 (1995), and *Ylst*, 501 U.S. at 803-

04), *cert. denied*, 531 U.S. 1089 (2001).

The state-law ground relied on by the Ohio Court of Appeals was an adequate basis for the court's decision. At the time of petitioner's conviction in 2000, it was a well-established and regularly followed practice in Ohio for appellate courts to deem any claims of error not objected to at trial as "waived" or procedurally defaulted. *See Taqwiim*, 2000 WL 1234322, at **3 (citing *State v. Brown*, 528 N.E.2d 523, 534 (Ohio 1988), *cert. denied*, 489 U.S. 1040 (1989)). It is well-settled that Ohio's contemporaneous objection rule, which was enforced by the Ohio Court of Appeals in this case, constitutes an adequate and independent state procedural bar that may be relied on as grounds for rejecting a claim of error. *See, e.g., Hinkle*, 271 F.3d at 244. Therefore, petitioner's failure to object at trial constitutes a procedural default which may serve to bar federal habeas review of his claim alleged in ground two concerning joinder of offenses.

Petitioner has waived the constitutional claim absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if the underlying merits of the claim are not reviewed because he is actually innocent of the offense. *See Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 485; *Engle*, 456 U.S. at 129; *Sykes*, 433 U.S. at 87. Petitioner claims ineffective assistance of counsel as cause. Ineffective assistance of counsel may constitute cause for a procedural default. *Murray*, 477 U.S. at 488.

To demonstrate that counsel's performance was constitutionally ineffective,

18

petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688.  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694.  A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this

standard.  *See id.* at 693.  However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice.  *See id.*  Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors."  *See id.* at 695.

"[I]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder . . . rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial."  *Lucero v. Kerby,* 133 F.3d 1299, 1314 (10th Cir.), *cert. denied,* 523 U.S. 1110 (1998)(quoting *United States v. Lane,* 474 U.S. 438, 446 n.8 (1986)).

In *Spencer v. Texas,* 385 U.S. 554 (1967), the United States Supreme Court upheld as constitutional the State's practice of trying a defendant under a habitual offender statute at the same time that he was tried for an additional crime.  *See Marshall v. Lonberger,* 459 U.S. 422, 437 n.6 (1983) (reaffirming *Spencer*).  Recognizing the prior convictions admitted for purposes of the recidivist statute may be prejudicial to a determination of the new crime, the Court stated:

> This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest.

*Spencer,* 385 U.S. at 562.

When offenses are joined, prejudice may result when:  (1) the jury confuses

or cumulates the evidence of the various crimes charged and finds guilt when, if the offenses were considered separately, it would not so find; (2) the defendant is hampered in presenting defenses because he desires to testify as to some crimes but not as to others; and (3) the jury uses evidence of one crime charged "to infer a criminal disposition on the part of defendant from which is found his guilt of the other crime . . . charged." *Lucero*, 133 F.3d at 1314; *Corbett v. Bordenkircher*, 615 F.2d 722, 724–25 (6th Cir.), *cert. denied*, 449 U.S. 853 (1980) (citing *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976)). In evaluating whether petitioner has been prejudiced to the extent that joinder of offenses violated his right to due process, courts examine the jury instructions provided, the prosecutor's statements about "other acts" evidence, whether there is a great disparity in the amount of evidence underlying the joined offenses and whether the evidence with respect to each of the offenses is sufficiently distinct. *Bean v. Calderon*, 163 F.3d 1073, 1084–85 (9th Cir. 1998), *cert. denied*, 528 U.S. 922 (1999); *Lucero*, 133 F.3d at 1314–15; *United States v. Cook*, 34 F.3d 1074 (table), No. 93–10512, 1994 WL 461637, at **2–3 (9th Cir. Aug. 25, 1994) (unpublished); *United States v. Lewis*, 787 F.2d 1318, 1322–1323 (9th Cir.), *amended by* 798 F.2d 1250 (9th Cir. 1986); *Carter v. Cambra*, No. C 97–4005 CRB, 1998 WL 556711, at *5 (N.D. Cal. Aug. 31, 1998) (unpublished), *aff'd,* 33 Fed.Appx. 308 (9th Cir. March 29, 2002), *cert. denied*, 537 U.S. 966 (2002). As under Ohio law, prejudice generally will not be found from joinder "when the evidence of each crime is

simple and distinct, even in the absence of cross-admissibility." *Bean*, 163 F.3d at 1085 (citing *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987), and *Drew v. United States*, 331 F.2d 85, 91 (D.C. Cir. 1964)).

In this case, the Ohio Court of Appeals noted:

> And, even if counsel had made and then renewed a request for severance of the joined counts at trial, we are unconvinced that the trial court would have abused its discretion in trying the charges together.  In contrast to our consideration of this matter in the first trial, in which we determined that it was not improbable that the jury had confused the fourteen counts and cumulated evidence of the robberies, the state in this case retried only the counts relating to the Futon and dry-cleaning stores, and the evidence concerning those incidents was not intertwined.  The crimes occurred on different dates against different victims.  Each victim described the assailant and identified Echols.  The evidence was direct and uncomplicated, and, at trial, due consideration was given to keeping the evidence of the two incidents separate and distinct.  Therefore, we are unconvinced that the jury had difficulty separating the evidence.

> . . . Having already determined that the evidence was direct and uncomplicated and capable of being segregated, we conclude that there was no ineffective assistance of counsel arising from the failure to renew a motion for severance.

(Doc. 7, Ex. T at 6-7).

Petitioner's chief complaint of prejudice arising from joinder in his brief to the Ohio Court of Appeals was that the jury would "infer criminal disposition on the part of the defendant and infer guilt from one crime to another charged." (Doc. 7, Ex. S at 4).  Since petitioner was found guilty of only one offense pertaining to the Futon store, it is unlikely that the jury considered evidence relating to the dry-cleaning incident as propensity evidence.

In this case, it is clear from the record that both the trial judge and the

prosecution steered the jury away from any improper use of "other acts" evidence as propensity evidence.  As the Ohio Court of Appeals determined the presentation of the evidence with respect to each offense was kept separate and was not intertwined.  Moreover, the prosecutor did not argue or even suggest that evidence tending to establish guilt with respect to an offense involving one victim could be used to find guilt with respect to a separate offense involving the other victim.  The trial court further explicitly instructed the jury:

> Mr. Echols is charged with several separate crimes.  So then you're going to have to consider each crime separately and apart from the other and you're going to have to consider the evidence that relates to that particular crime separately and apart from the other.

(Doc. 7, Tr. 300).  This case does not involve a disparity in the amount of evidence underlying the joined offenses.  In addition, as the Ohio courts found, the factual situations, which involved different victims, were easy to understand.

Since petitioner was not prejudiced by the joinder, counsel's failure to move for severance did not involve constitutionally ineffective assistance as asserted in ground three of the petition.  Petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of counsel claim because he has not demonstrated that the ruling of the Ohio Court of Appeals constituted an unreasonable application of *Strickland* or an unreasonable determination of the facts in light of the record evidence.

For the reasons discussed above, ineffective assistance of counsel does not

constitute cause for the procedural default of petitioner's joinder claim. Because petitioner also fails to  demonstrate that he is actually innocent of the crime, he has waived the joinder claim, asserted in ground one of the petition, for federal habeas corpus review.[1]

**III.  Petitioner is not entitled to habeas corpus relief with respect to his fourth claim challenging the reliability of the in court identification and his fifth claim that counsel was constitutionally ineffective for failing to object to the identification.**

As his fourth ground for relief, petitioner challenges the pretrial identification procedure as unduly suggestive and unreliable, thereby violating his right to due process.  In his fifth ground for relief, petitioner asserts that counsel was deficient in not objecting to the identification.

Respondent contends that petitioner has waived his claim challenging the in court identification because counsel failed to raise an objection at trial to the identification.  However, the Ohio Court of Appeals did not rely on a procedural default in this instance. Because the Ohio Court of Appeals fully considered the merits of this claim and did not undertake merely a "plain error" review, this Court is also not precluded from considering the merits.

---

[1]This is somewhat fictitious because in order to assess the ineffective assistance of counsel claim, this court had to consider the underlying joinder claim.

The Ohio Court of Appeals found:

> A one-on-one showup near the time of an offense does not necessarily bring about misidentification, and may, under certain circumstances, be used to ensure accuracy. The linchpin to admission of identification testimony is reliability, which is determined from the totality of the circumstances. The factors to be considered in evaluating the likelihood of misidentification include the following: (1) the opportunity of the witness to view the suspect at the time of the offense; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the offense and the confrontation.
>
> The record of the second trial establishes, as it did in the first trial) that, immediately after the robbery, Richey gave the police a description of the alleged robber. The police showed Richey a photograph array containing a photograph of Echols. Richey identified Echols as the man who had pulled a knife on her. Some time later that day, after having viewed two other suspects in a police car, Richey viewed Echols in the back of a police cruiser. Also, Richey identified Echols at trial. Given the totality of the circumstances, we conclude that, because Richey had an opportunity to view Echols during the robbery, had given the police officers a description of Echols, and had identified Echols from an unchallenged photograph array, the identification evidence was not impermissibly suggestive so as to violate Echols's due-process rights.

(Doc. 7, Ex. T at 7-8)[citations omitted].

A conviction in a trial in which there was identification testimony following pretrial identification violates a defendant's constitutional right to due process whenever the pretrial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

*Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986), *cert. denied*, 482 U.S. 918 (1987) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *see also Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994), *cert. denied*, 515 U.S. 1145 (1995).  It is the likelihood of misidentification that violates the defendant's due process right.  *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  In many instances an eyewitness has only briefly observed an alleged perpetrator under poor conditions at a time of extreme stress and excitement, and the due process concern is whether the trustworthiness of the eyewitness's identification testimony can be undermined by the police having engaged in an improperly suggestive pretrial identification process.  This being so, the competency of such trial testimony may hinge upon the propriety of that which occurred pretrial.  *See Manson v. Brathwaite*, 432 U.S. 98, 112, 114 (1977); *Simmons*, 390 U.S. at 383–84; *Summitt v. Bordenkircher*, 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders*, 449 U.S. 341 (1981); *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976); *see also Ledbetter*, 35 F.3d at 1070.

A two-step analysis is utilized in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure.  The court must first consider whether the procedure was unduly suggestive.  *Ledbetter*, 35 F.3d at 1070–71 (citing *Thigpen*, 804 F.2d at 895).  The defendant bears the burden of proving this element.  *Id.* at 1071 (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.), *cert. denied*, 506 U.S. 964 (1992)).  If the court finds

26

that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the trial identification was nevertheless reliable. *Id.*; *see also Neil,* 409 U.S. at 199–200. The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification. *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199–200; *United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000), *cert. denied,* 534 U.S. 1107 (2002); *Ledbetter,* 35 F.3d at 1071.

Assuming *arguendo* that the show up was unduly suggestive, the identification was nevertheless reliable. Immediately after the incident, Mrs. Richey picked petitioner's picture out of a photo array before the show up occurred and indicated that she had "no doubt" that it was him. Tr. 135–136. She had adequate time to observe petitioner on the day of the offense because he visited her store twice that day and spent five to ten minutes with her the second time. Tr. Tr. 133, 127–128. She testified that she had "a very good, close look at him when he was first in the store" because she was very close to him. Tr. 138. During the second visit, she was paying close attention to him because he was holding a knife eight to ten inches from her face. Tr. 129–130, 131. In identifying petitioner in court, Mrs. Richey indicated that she had no doubt that he was the perpetrator. Tr. 139.

27

Upon review of the record, this Court concludes that the Ohio court's rejection of petitioner's challenge to the pretrial identification was based on a reasonable assessment of the facts in light of the record evidence and was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court in the *Neil* and *Manson* decisions. Accordingly, petitioner is not entitled to habeas corpus relief with respect to his fourth claim.

Since the identification procedure did not violate due process, counsel's failure to object did not prejudice petitioner's case. Accordingly, petitioner has failed to establish that his counsel was constitutionally ineffective on this ground and petitioner is not entitled to relief with respect to his fifth claim.

As part of his fourth ground for relief, petitioner also asserts that he was deprived of counsel at the show up. Based on *McNeil*, 501 U.S. at 176–179, the Ohio Court of Appeals concluded that no such right existed at the show up because petitioner had not been indicted or formally charged at that time and was not subjected to a custodial interrogation.[2] (Doc. 7, Ex. T at 8). Petitioner has not demonstrated either of these circumstances existed. Accordingly, the Ohio court's analysis is consistent with *McNeil* and constitutes a reasonable determination of the facts of record.

## IV. Petitioner is not entitled to relief with respect to his speedy trial claim asserted as ground six.

---

[2]The opinion cited to the Ohio Court of Appeals decision in the first trial which in turn cited *McNeil. See* Doc. 7, Ex. T at 8 n. 16; Ex. F at 27-28.

In Ground six of the petition, petitioner alleges he was denied his constitutional right to a speedy trial by a two-hundred and six day delay[3] that occurred in retrying him.

The right to a speedy trial guaranteed by the Sixth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This constitutionally-guaranteed right to a speedy trial is considered "fundamental" and is applicable to state criminal proceedings through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967); *Cain v. Smith*, 686 F.2d 374, 380 (6th Cir. 1982).

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court recognized the constitutional right to a speedy trial permits some delays; is "necessarily relative," depending on the circumstances of each case; and cannot "be quantified into a specified number of days or months." *Barker*, 407 U.S. at 521-23. Therefore the Court established a balancing test, in which the conduct of both the prosecution and the defendant are weighed, to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id.* at 530; *see also United States v. Marion*, 404 U.S. 307, 320-21 (1971); *Cain*, 686 F.2d at 381 (and Supreme Court cases cited therein). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the

---

[3]The trial was actually delayed longer than the 206 days. However, petitioner charges that only the 206 day delay compromised his constitutional rights. (Doc. 7, Ex. S at 11-12).

defendant's assertion of his right to a speedy trial; and (4)  prejudice to the defendant.  *Barker,* 407 U.S. at 530.

The degree of prejudice is assessed in light of the interests of the accused that the speedy trial right was designed to protect.  *Barker,* 407 U.S. at 532.  Those interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired by dimming memories and the loss of exculpatory evidence caused by the long delay.  *Id.; see also Doggett v. United States*, 505 U.S. 647, 654 (1992).  Of these concerns, the most serious is the possibility that the defense will be impaired, because the inability of a defendant adequately to prepare a defense undermines the fairness of the entire system.  *Barker,* 407 U.S. at 532.

30

The Ohio Court of Appeals made the following factual findings, which are presumed correct,[4] and rejected petitioner's constitutional speedy trial claim in pertinent part as follows:

> Having reviewed the delays in this case, we note that the record reflects several reasons for the delays. First, the one hundred–nine-day delay was primarily a result of the fact that Echols's trial counsel had withdrawn and that new counsel had been appointed in his place. Second, the fifty-five-day delay occurred because the state had requested a continuance in order to secure the appearance of two witnesses (both police officers) who were unavailable on February 11, 2000. Additionally, Echols never made a demand for a speedy trial. While the delay in bringing Echols to trial was substantial, we are not persuaded that the delay was constitutionally unreasonable in view of the numerous motions made by Echols, the appointment of new defense counsel, and the unavailability of witnesses.

(Doc. 7, Ex. T at 10).

Upon review of the record, the Court concludes that the Ohio Court of Appeals' rejection of petitioner's constitutional speedy trial claim on the merits neither was contrary to nor involved an unreasonable application of the balancing test established by the Supreme Court in *Barker*, and was not based on an unreasonable determination of the facts in light of the record evidence. Under the first *Barker* factor, although the disputed two hundred and six day lapse in time before the trial date was sufficiently lengthy to arguably trigger a speedy trial

---

[4]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has not cited or presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

31

inquiry, *see Barker,* 407 U.S. at 530, it appears that petitioner was responsible for a significant part of the delay, under the second *Barker* factor. Petitioner does not contest the appellate court finding that he failed to assert his speedy trial rights which is the third factor to be considered. Finally, although petitioner's pretrial incarceration was not insubstantial, no showing was made that the delay in trial impaired petitioner's ability to prepare a defense or caused him to suffer undue anxiety or concern. Accordingly, the prejudice factor weighs in favor of the state.

Upon balancing the four *Barker* factors, it was reasonable for the state appellate court to rule that petitioner was not deprived of his Sixth Amendment right to a speedy trial by a 206-day delay. Petitioner, therefore, is not entitled to habeas corpus relief based on his constitutional speedy trial claim alleged in Ground six.

## CONCLUSION

Upon a *de novo* review of the record, the Court finds that the Magistrate Judge has accurately set forth the applicable law and has properly applied it to the particular facts of this case. Accordingly, in the absence of any objection by petitioner, this Court accepts the Report as uncontroverted.

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby ADOPTS his Report and Recommendation dated June 14, 2005. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED WITH PREJUDICE.**

32

A certificate of appealability shall not issue with respect to the dismissal on procedural default grounds of the claim for relief alleged in ground two of the petition because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims.[5] A certificate of appealability shall not issue with respect to petitioner's remaining grounds for relief because petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

---

[5] Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether ground two of the petition states a valid constitutional claim. *See Slack,* 529 U.S. at 484.

33

With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting the Report and Recommendation would be not be taken in "good faith," and therefore **DENIES** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

This case is **DISMISSED AND TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

      s/Herman J. Weber      
Herman J. Weber, Senior Judge
United States District Court
